# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

THE SPORTSMAN CHANNEL, INC.,

    Plaintiff,

v.                                            Case No. 08-CV-65

THE SMALL GROUP, INC. and
THE SMAUL GROUP, INC., d/b/a IMAGE FACTORY,

    Defendants.

_____

## ORDER

The Sportsman Channel, Inc. ("Sportsman Channel") has filed a four-count complaint against the Small Group, Inc., and Smaul Group, Inc., d/b/a Image Factory ("Image Factory"). The defendants have moved to dismiss this action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure; alternatively, the defendants move the court to transfer this action to the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). For the reasons set forth below, the court will deny these motions.

### BACKGROUND

Sportsman Channel is a Delaware corporation with its principal place of business in Wisconsin. Sportsman Channel's primary objective is to operate as a television channel that provides hunting and fishing programs to its viewers. Sportsman Channel's president and chief executive officer is Michael Cooely. The Image Factory is a California corporation with its principal place of business in

California. Image Factory operates as a brand agency that specializes in creating promotions for companies. The Image Factory's president is Jeffrey Smaul.

In early 2007, Sportsman Channel began discussions with Image Factory regarding certain services and marketing promotions that could increase the number of requests from cable and satellite television subscribers to add Sportsman Channel to their programming packages, thereby increasing the number of Sportsman Channel viewers. Image Factory informed Sportsman Channel that it had experience promoting television and entertainment businesses and that it would be well-equipped to handle Sportsman Channel's marketing needs.

In April 2007, Image Factory presented a proposal to Sportsman Channel, which contained ideas for promotional efforts that might assist Sportsman Channel to meet its goals. This proposal, hereinafter referred to as the "Marketing Tour Agreement," detailed several efforts Image Factory would undertake to promote Sportsman Channel. One such effort described by Image Factory in the Marketing Tour Agreement was a multi-city tour designed to increase Sportsman Channel awareness in several targeted cities. Both parties described the promotion as a traveling "American Idol" type contest titled "The Hunt for the Next Sportsman." After negotiations, the agreed upon fee for this effort was $350,000.00.

Image Factory stated that in early May 2007, Sportsman Channel publicly announced that Image Factory would be developing and implementing the promotional campaign during the summer of 2007. Following a June 2007

conference call between the two parties, Sportsman Channel advised Image Factory that it accepted all terms of the Marketing Tour Agreement and sent an initial payment to Image Factory in the amount of $115,000. Following this conference call, Image Factory sent out a formal contract to be signed by Sportsman Channel. This contract, hereinafter referred to as the "Proposed Contract," included several of the original terms of the Marketing Tour Agreement; it detailed the costs and components of Image Factory's marketing events performed on behalf of Sportsman Channel. However, it did not include the proposed number of viewers that Image Factory expected to attract for Sportsman Channel, and it also included a forum selection clause providing that all disputes arising from the agreement must be brought in the State of California. (Smaul Decl. Exh. B.) Sportsman Channel averred that a substantial viewership increase was an important term of the agreement between the two parties, and, without such assurances, Sportsman Channel refused to sign the Proposed Contract. The parties dispute the precise dates that these events occurred; the court finds that even upon these disagreements, it remains clear that the Proposed Contract was never signed by Sportsman Channel.

Sportsman Channel, dissatisfied with the terms of the Proposed Contract, stopped payment on the $115,000 check previously issued to Image Factory. After further discussions, Image Factory and Sportsman Channel were unable to agree upon the terms of the contract, and this litigation ensued. Sportsman Channel's

-3-

complaint sets forth several causes of action: (1) negligent misrepresentation; (2) strict responsibility misrepresentation; and (3) fraud in the inducement. Sportsman Channel also seeks a declaratory judgment stating that its recision of the parties' agreement was justified.

## ANALYSIS

Image Factory sets forth several grounds for dismissal or transfer of this case. Image Factory argues that the court should dismiss the complaint pursuant to 12(b)(3) because the forum selection clause in the contract requires claims to be brought in California, thereby making the Eastern District of Wisconsin an improper venue. Alternatively, Image Factory moves the court to transfer the case pursuant to 28 U.S.C. §§ 1404(a) or 1406.

Image Factory begins its argument by setting forth that this court should dismiss this action pursuant to Rule 12(b)(3). Specifically, Image Factory cites the Proposed Contract's section governing disputes, which states in relevant part:

> This Agreement shall be governed and construed under the laws of California, and legal action regarding the Agreement may only be brought in the State of California. The invalidity or unenforceability of any portion of this Agreement shall not destroy the rest of the Agreement that is otherwise enforceable and valid. Neither party may assign any of its rights or delegate any of its obligations under this Agreement to any third party without the express written consent of the other. Consent to assign shall not be unreasonably withheld. No assignment shall release the Client of any of its obligations or alter any of its primary obligations to be performed under this Agreement. If Client or Designers shall sustain a loss as a result of a claim, suit, or proceeding brought because of publication of material which Client approved of and authorized Designers to produce, Client agrees to hold

> Designers harmless for any such losses. In the event of any dispute arising out of or relating to this Agreement, such dispute shall be submitted to arbitration in Los Angeles, California, under the rules of American Arbitration Association. In the event of litigation or other legal proceedings, the prevailing party shall be entitled to recover its reasonable costs and expenses (including attorney's fees) incurred in the proceeding.

(Smaul Decl. Exh. B.) Sportsman Channel argues that this case should not be dismissed or transferred because it never signed the Proposed Contract and is not bound by the forum selection clause contained therein.

"A challenge to venue based upon a forum selection clause can appropriately be brought as a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3)." *Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759, 760 (7th Cir. 2006). The Supreme Court has held that forum selection clauses are presumptively valid and should only be overturned in limited circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13 (1972). "Like any contract provision, a forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen,* 972 F.2d 753, 757 (7th Cir. 1992). Courts have routinely found that forum selection clauses must be enforced unless they are unreasonable under the circumstances. *See, e.g, Huges v. McMenamon*, 204 F.Supp.2d 178 (D. Mass 2002).

In order for transfer to be appropriate pursuant to the forum selection clause, the court must first determine if the forum selection clause in the Proposed Contract

is valid and enforceable. Parties will not be bound by a forum selection clause that is neither valid nor enforceable. *See Paper Express,* 972 F.2d at 755.

It is critical to analyze the two documents in question: the Marketing Tour Agreement and the Proposed Contract. A review of the Marketing Tour Agreement demonstrates that this document supplied many terms of the parties' original agreement; it set forth the work Image Factory was to commence for Sportsman Channel, in addition to the costs of the project. (*See* Smaul Decl. Exh. A.) In Wisconsin, as in most states, a valid contract requires an offer, acceptance and consideration. *Briggs v. Miller,* 176 Wis. 321, 325, 186 N.W. 163 (1922). Offer and acceptance exists when the parties mutually express assent, and consideration exists if the parties manifest an intent to be bound to the contract. *Gustafson v. Physicians Ins. Co.,* 223 Wis. 2d 164, 173, 588 N.W.2d 363 (Wis. Ct. App. 1998). Based upon the affidavits submitted by the parties, it is clear that the terms set forth in the Marketing Tour Agreement were bargained for and, for the most part, constituted an understanding of the parties' obligations. Arguably, and under contract law, it appears that the Marketing Tour Agreement constituted an offer that Sportsman Channel verbally accepted.

The court must next determine whether the following written communication, the Proposed Contract containing the newly added forum selection clause, bound the parties to the contents therein. Here, the court determines that it did not. It is well-established that the addition of forum selection clauses to agreements

-6-

Case 2:08-cv-00065-JPS   Filed 07/25/08   Page 6 of 14   Document 16

constitutes a "material alteration." *See, e.g., Dale R. Horning Co., Inc. v. Falconer Glass Industries, Inc.*, 710 F.Supp. 693, 698-99 (S.D.Ind. 1989) (finding that, as a matter of law, a forum selection clause materially altered an oral contract); *Product Components, Inc. v. Regency Door and Hardware, Inc.*, 568 F.Supp. 651, 653-54 (D.C. Ind. 1983). Terms that materially alter an agreement cannot bind a party absent their consent. *See Union Carbide Corp. v. Oscar Mayer Foods Corp.*, 947 F.2d 1333, 1335-36 (7th Cir. 1991). Accordingly, the forum selection clause would not become a part of the parties' agreement absent express consent from Sportsman Channel. A review of the parties' affidavits demonstrates that there was no consent to this subsequent change; indeed, upon receipt of the Proposed Contract, Sportsman Channel refused to sign the document and stopped payment of a previously issued check because it was dissatisfied with the Proposed Contract's terms. (*See* Cooley Decl. ¶¶ 9-11.)

Furthermore, the court also finds that the forum selection clause may not be applied to Sportsman Channel through incorporation. "A document is incorporated into the parties' contract only if the parties intended its incorporation." *118 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). The Marketing Tour Agreement and the Proposed Contract are certainly related to one another, as they both detail the terms of the promotional efforts and agreements of the parties, yet this alone is not enough to find that they are to be incorporated as a single contract. Absent both parties' clear and specific intent to incorporate a subsequent document

-7-

into the original agreement, a court must find that future conditions are not incorporated into the parties' original understanding of their agreement. *See MicroMetl Corp. v. TranzAct Technologies, Inc.,* 2008 WL 2356511, at *4 (S.D. Ind. 2008). Sportsman Channel's outright refusal to sign the Proposed Contract belies any intent to have the documents incorporated to form the parties' entire and singular agreement.

Under these circumstances, the court finds that it would be unreasonable to bind Sportsman Channel to terms of a contract they did not agree upon. *See Continental Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 607 (7th Cir. 2003) (noting that a forum selection clause should not be enforced upon a finding that it would be unreasonable to do so); *see also Huges*, 204 F.Supp.2d at 181. The Proposed Contract was neither bargained for nor consented to by Sportsman Channel, and the court accordingly determines that it would be unreasonable and contrary to contract jurisprudence to bind Sportsman Channel to the forum selection clause. Therefore, dismissal under Rule 12(b)(3) is not warranted.

Having found that dismissal under Rule 12(b) is inappropriate, the Court will next turn to Image Factory's alternative motion for transfer of venue, which is brought under 28 U.S.C. §§ 1404(a) and 1406(a). Section 1404(a) states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Wisconsin action could have been filed in

-8-

California because Image Factory is a California corporation with its principal place of business in Calabasas, California. *See* 28 U.S.C. § 1391(b) (stating that a federal action that is based upon a federal question may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State").

Aside from determining that venue is proper in both the transferor and transferee court, the court must determine whether transfer is in the "interest of justice" and "for the convenience of the parties and witnesses." 28 U.S.C. § 1404(a); *TruServ Corp. v. Neff*, 6 F.Supp.2d 790, 793 (N.D. Ill. 1998). The party seeking to transfer the action bears the burden of demonstrating that the transferee forum is clearly more convenient. *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell*, 939 F.Supp. 646, 651 (S.D.Ind.1996). "Venue may not be transferred simply to shift inconvenience from the defendant to the plaintiff." *Tsaparikos v. Ford Motor Co.*, 2002 WL 31844949, *1 (N.D. Ill. Dec. 18, 2002). Courts consider the following factors in deciding whether to transfer venue to another district: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the convenience of the parties; (4) the convenience of non-party witnesses; (5) the court's power to compel the appearance of unwilling witnesses and the costs of obtaining attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of the courts with the applicable law; (8) the relationship between the forum community and the subject of the litigation; (9) the congestion of the respective court dockets; and

(10) whether transfer would facilitate consolidation of cases. *See Amoco Oil Co. v. Mobil Oil Corp.*, 90 F.Supp.2d 958, 960 (N.D. Ill. 2000).

Generally, a plaintiff's choice of forum is given substantial weight and deference, particularly if it is the plaintiff's home forum. *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F.Supp.2d 796, 798 (N.D. Ill. 1998). Accordingly, this court notes that Sportsman Channel's choice of forum should be given deference; however, the plaintiff's choice must still be measured against the standards of § 1404(a) if it appears that the plaintiff's choice is inappropriate when considering the convenience of the parties and witnesses and the "interests of justice." *See id; see also Von Holdt v. Husky Injection Molding Systems, Ltd.*, 887 F.Supp. 185, 188 (N.D. Ill. 1995).

The court must also consider the convenience of the witnesses when deciding a motion to transfer. "The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Rose v. Franchetti*, 713 F.Supp. 1203, 1214 (N.D. Ill 1989). In evaluating this factor, the court considers the number of witnesses located in each forum, although venue should not be determined by which party produces a longer witness list. *Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F.Supp. 1014, 1018 (N.D. Ill. 1998) (citing *Chemical Waste Management, Inc. v. Sims*, 870 F.Supp. 870, 876 (N.D. Ill. 1994). The nature, quality, and importance of the submitted witnesses' testimony must be considered by the court. *See Rohde v. Cent. R.R. of Ind.,* 951 F.Supp. 746, 748 (N.D. Ill. 1997) (noting the

-10-

Case 2:08-cv-00065-JPS   Filed 07/25/08   Page 10 of 14   Document 16

"movant bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case") (internal citations and quotations omitted); *United Air Lines*, 8 F.Supp.2d at 799; *see also Brandon Apparel Inc. v. Quitman Mfg. Co. Inc.*, 42 F.Supp.2d 821, 834 (noting "the court will not consider the convenience of unidentified witnesses").

In Smaul's affidavit, he sets forth several witnesses he alleges will testify on behalf of Image Factory. (*See* Smaul Decl. ¶ 16.) Most of these witnesses are located in California, but they are employees or agents of Image Factory. (*Id.*) Courts sitting in the Seventh Circuit have assumed that employees of the parties will appear voluntarily, which does not implicate the court's subpoena power nor weigh heavily in favor for a transfer. *See, e.g., IP Innovation L.L.C. v. Lexmark Intern., Inc.*, 289 F.Supp.2d 952, 955 (N.D. Ill. 2003); *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F.Supp. 1307, 1311 (N.D. Ill. 1993) (noting the availability of compulsory process over witnesses who are material "weighs heavily in this analysis"); *Household Fin. Servs., Inc. v. N. Trade Mortgage Corp.,* 1999 WL 782072, at *6 (N.D. Ill. 1999) (stating that there is "a strong presumption" that a party will make its employees available in any forum). Smaul avers that other California witnesses will testify, but they are either mentioned obliquely in title only, or not listed at all for what he asserts are confidential reasons. (*Id.*) Simply asserting that someone will testify, absent specifics and the materiality of their testimony, does not satisfy the burden nor weigh in favor of transfer. *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d

1286, 1293-94 (7th Cir. 1989) (suggesting that a movant must supply specific affidavits, information, and other documents and state with particularity who would be called and the significance of their testimony). Accordingly, the court finds that the list of witnesses Image Factory submits does not implicate § 1404(a)'s "convenience of the witnesses" consideration as they are either Image Factory employees or obliquely referenced and unidentified. Next, the court also gives little weight to Image Factory's arguments that documents are located in California. "[I]n these more modern days of photocopying, faxing and other electronic means of retrieval, [this] factor is a nonstarter." *Undertow Software, Inc. v. Advanced Tracking Technologies, Inc.*, 2002 WL 31890062, at *1 (N.D. Ill. 2002). Smaul declares that "a great majority of the documents that will be used by the parties in this case are located in California. Many such documents are in the possession of third parties located in California." (Smaul Decl. ¶ 19.) Aside from these conclusory assertions, Smaul does not demonstrate that these documents are immovable, unretrievable, or that production of them in Wisconsin would be burdensome. Accordingly, the court finds that document location does not weigh in favor of a transfer.

Finally, the "interests of justice" component, which includes an analysis of the efficient administration of the court system, similarly does not weigh in favor of a transfer. *See Symons Corp. v. Southern Forming and Supply, Inc.*, 954 F.Supp. 184, 187 (N.D. Ill. 1997). A review of district court management statistics reveals that the

case would fair about equally in the Central District of California and in the Eastern District of Wisconsin. For the past six years, the average time a civil case took to get to trial in this district was 20.66 months; in the Central District in California, it was 20.35 months. During a similar time period, the average percentages of cases over three years old that were still pending was 7.7 % in the Eastern District of Wisconsin and 6.9% in the Central District of California. *Federal Court Management Statistics, available at:* http://www.uscourts.gov/cgi-bin/cmsd2007.pl (last visited July 22, 2008). The court finds that these differences are nominal and do not warrant a transfer. *See First Nat. Bank v. El Camino Resources, Ltd.,* 447 F.Supp.2d 902, 913-14 (N.D. Ill. 2006) (considering speed to trial as part of the interests of justice).

In summary and upon a review of the relevant factors, the court determines that transfer of venue pursuant to § 1404(a) is not appropriate. Based on the above considerations, the court finds that Image Factory has failed to show that the Central District of California is clearly the more convenient forum. First, Wisconsin is Sportsman Channel's home and chosen forum. Second, Image Factory has failed to show that transfer would best serve the convenience of the witnesses. Third, statistics suggest that the case would not be resolved more quickly in the Central District of California than in the Eastern District of Wisconsin.

Finally, the court notes that transfer under § 1406(a) would be wholly inappropriate. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the *wrong* division or district shall dismiss, or if it be

in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. As discussed above, venue is proper in the Eastern District of Wisconsin and § 1406 is inapplicable.

Accordingly,

**IT IS ORDERED** that defendant's motion to dismiss pursuant to 12(b)(3) of the Federal Rules of Civil Procedure or, in the alternative, to transfer this action to the Central District of California pursuant to 28 U.S.C. §§ 1404(a) and 1406(a) be and the same is hereby **DENIED.**

Dated at Milwaukee, Wisconsin, this 25th day of July, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge